# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

SABAL TRAIL TRANSMISSION, LLC,

    Plaintiff,

v.

+/- 0.93 ACRES OF LAND IN CITRUS COUNTY FLORIDA, ROBERT B. KLINE, DEBRA KLINE, FAITH FIRST FAMILY TRUST, PENNYMAC CORP, A FOREIGN PROFIT CORPORATION, CAPITAL CITY BANK, A FLORIDA CORPORATION AND UNKNOWN OWNERS, IF ANY,

    Defendants.
_____/

Case No: 5:16-cv-202-Oc-34PRL
Tract No(s): CCL-FL-CI-080.000

## ORDER

THIS CAUSE comes before the Court upon Plaintiff Sabal Trail Transmission, LLC's ("Sabal Trail") Motion for Partial Summary Judgment (Doc. 2) and Motion for Preliminary Injunction for Immediate Possession (Doc. 3). For the following reasons, the motions should be granted.

## BACKGROUND

On February 2, 2016, the Federal Energy Regulatory Commission ("FERC") issued an order which, among other things, granted to Sabal Trail a Certificate of Public Convenience and Necessity ("FERC Certificate") that authorizes Sabal Trail to construct

and operate the Sabal Trail Project ("Project"), an interstate natural gas pipeline. Sabal Trail filed this condemnation action against Defendants Robert B. Kline, Debra Kline, Faith First Family Trust,[1] Pennymac Corp., and Capital City Bank in order to acquire the subject easements necessary to complete the Project. (Doc. 1). Sabal Trail filed the present motions simultaneously with the complaint.

On April 1, 2016, Sabal Trail effected substitute service on Defendants Robert B. Kline and Debra Kline pursuant to Federal Rule of Civil Procedure 71.1(d)(3)(A). (Docs. 9, 10). Robert B. Kline and Debra Kline have not filed an answer to the complaint nor have they filed any response in opposition to the motions. The Court held a hearing on the motions on May 13, 2016, and counsel for Robert B. Kline and Debra Kline appeared and informed the Court that the property had been in foreclosure and taken back by the bank, but that they had no opposition to the motions.

On April 8, 2016, Sabal Trail effected service on Pennymac Corp. pursuant to Rule 71.1(d)(3)(A). (Doc. 14). Pennymac Corp. filed an answer to the complaint but did not file a response in opposition to the motions. (Doc. 29). Although Pennymac Corp. did not appear at the hearing, counsel for Robert B. Kline and Debra Kline stated that it did not oppose the motions.

On April 15, 2016, Sabal Trail effected service on Capital City Bank pursuant to Rule 71.1(d)(3)(A). (Doc. 17). Capital City Bank has not filed an answer to the complaint or responses in opposition to the motions nor did it appear at the hearing.

---

[1] Upon motion by Sabal Trail, the Court dismissed Faith First Family Trust as a defendant in this proceeding because it was unnecessarily joined. (Doc. 30).

2

# PARTIAL SUMMARY JUDGMENT—FEDERAL POWER TO CONDEMN

## A. Findings of Fact

1. Sabal Trail requests that this Court enter an order of partial summary judgment establishing its right to condemn the subject easements.

2. On February 2, 2016, FERC issued an order granting Sabal Trail a FERC Certificate that authorizes Sabal Trail to construct and operate the Project.

3. In order to construct and operate the Project in accordance with the FERC Certificate, Sabal Trail must acquire the subject easements described in the complaint.

4. As part of the certification process, Sabal Trail submitted and FERC approved "alignment sheets" showing the final alignment of the Project.

5. Sabal Trail prepared the subject easements (Doc. 1, Ex. 2) to conform to the FERC-approved alignment sheets. (Doc. 4 ¶ 13).

6. Sabal Trail was unable to acquire the subject easements by contract. (Doc. 4 ¶ 16).

## B. Conclusions of Law

7. Congress enacted the Natural Gas Act to impose federal regulation upon the interstate transportation and sale of natural gas for resale to the public for domestic, commercial, industrial, or any other use. As such, the Natural Gas Act applies to the Project. The pertinent section of the Natural Gas Act provides:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the

> location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located.

15 U.S.C. § 717f(h).

8. A number of courts have held, and this Court agrees, the Natural Gas Act authorizes a party to exercise the federal power of eminent domain to acquire property necessary for an interstate natural gas pipeline project when: (1) the plaintiff is the holder of a FERC certificate authorizing a project, (2) FERC has determined that the property is necessary for the project, and (3) the plaintiff is unable to acquire the property by contract. *See e.g., Columbia Gas Trans., LLC, v. 1.01 Acres, More or Less, in Penn Twp., York Cty., Pa.*, 768 F.3d 300, 304 (3d Cir. 2014); *Columbia Gas Trans., LLC, v. 0.85 Acres*, No. WDQ-14-2288, 2014 WL 4471541, at *3 (D. Md. Sept. 8, 2014); *Transcon. Gas Pipe Line Co., LLC, v. Permanent Easement Totaling 2.322 Acres*, No. 3:14-cv-00400-HEH, 2014 WL 4365476, at *4 (E.D. Va. Sept. 2, 2014).

9. Under the pertinent section of the Natural Gas Act, Sabal Trail meets each condition precedent to condemn the subject easements. Sabal Trail holds a FERC Certificate authorizing the Project. FERC has determined that the subject easements are necessary for the Project, and Sabal Trail has been unable to acquire the subject easements by contract. (Doc. 4).

10. District courts have limited jurisdiction in Natural Gas Act condemnation actions. The condemnation action "does not provide challengers with an additional forum to attack the substance and validity of a FERC order. The district court's function under

the statute is not appellate but, rather, to provide for enforcement." *Williams Nat. Gas Co. v. Okla. City*, 890 F.2d 255, 264 (10th Cir. 1989), *cert. denied*, 497 U.S. 1003 (1990). "The District Court's sole charge and authority is to evaluate the scope of the FERC Certificate, and order the condemnation of property in accordance with that scope." *Steckman Ridge GP, LLC, v. An Exclusive Nat. Gas Storage Easement Beneath 11.078 Acres, More or Less, in Monroe Twp.*, Nos. 08-168, et al., 2008 WL 4346405, at *3 (W.D. Pa. Sept. 19, 2008); *see also Columbia Gas Transmission Corp. v. An Easement to Construct, Operate & Maintain a 24-Inch Pipeline*, No. 5:07CV04009, 2008 WL 2439889, at *2 (W.D. Va. June 9, 2008).

11. As several courts have found, "the role of the district court in Natural Gas Act eminent domain cases extends solely to examining the scope of the certificate and ordering the condemnation of property as authorized in that certificate." *Columbia Gas Trans. Corp.*, 2008 WL 2439889, at *2.

12. Thus, this Court finds that Sabal Trail is authorized by the Natural Gas Act to exercise the power of eminent domain and has the right to condemn the subject easements identified in the Notice of Condemnation (Doc. 1, Ex. 5).

## PRELIMINARY INJUNCTION AND POSSESSION

**A. Findings of Fact**

13. Sabal Trail also requests that the Court issue a preliminary injunction granting it immediate possession of the subject easements in order to begin pre-construction and construction activities.

14. The FERC Certificate authorizes the construction and operation of the

5

Project on its specified terms and conditions. (FERC Certificate, ¶ 88, p. 28). FERC found the Project is necessary, its "benefits to the market will outweigh any adverse effects on other pipelines and their captive customers, and on landowners and surrounding communities," and "the public convenience and necessity requires approval of" the Project, as conditioned in the order granting certification. (*Id.*).

15. The purpose of the Project is to provide additional supplies of natural gas to Florida Power & Light Company and Duke Energy Florida, LLC, for their power generation needs and to the southeast region of the United States as a whole, by making additional supplies and new energy infrastructure available to support other regional power generators and the growing demand for natural gas. Upon completion, the Project will be able to transport up to 1.1 billion cubic feet of natural gas per day. (FEIS at pp. 1-2 through 1-6; FERC Certificate at ¶ 4, p. 2).

16. The Project involves the construction and operation of approximately 516.2 miles of natural gas pipeline and related facilities. (Doc. 5 at ¶ 11). The pipeline facilities will consist of approximately 481.6 miles of mainline pipeline in Alabama, Georgia, and Florida; 13.1 miles of lateral pipeline (the Hunters Creek Line) in Florida; 21.5 miles of lateral pipeline (the Citrus County Line) in Florida; five new natural gas-fired compressor stations; and appurtenant facilities. (*Id.*). Sabal Trail also will construct and operate a facility in Osceola County, Florida, referred to as the Central Florida Hub.

17. The magnitude of the Project requires a complex and coordinated construction process, with work activities being performed in sequential phases. (Doc. 5 at ¶ 13). The Project consists of five pipeline construction spreads and three compressor

station construction spreads (a "spread" is a separate construction segment) across three states. (*Id.*). The construction schedule in Florida is predicated upon construction of the new pipeline facilities starting in particular places within the several spreads and proceeding in a sequential manner. (*Id.* at ¶ 14). The process is comparable to an assembly line, with specialized teams following each other down the right of way, successively performing tasks such as clearing, grading, ditching, pipestringing, welding, coating, pipe-laying, backfilling, testing, and land restoration. (*Id.*). Construction is carefully planned so that crews and equipment proceed sequentially along the right of way at a distance per day dependent on topography, road and stream crossings, and other factors. (*Id.*).

18.   Sabal Trail must begin construction on each spread no later than June 21, 2016, in order to be completed by the May 1, 2017, in-service date. (Doc. 5 at ¶ 13). Sabal Trail must take immediate possession in order to perform certain pre-construction activities. (*Id.*).

19.   If construction begins on previously-acquired parcels but a construction crew reaches a parcel that Sabal Trail does not yet possess, Sabal Trail would have only two options, both of which entail significant delays and costs: Sabal Trail must either stop work on the Project altogether until the necessary easements can be acquired or try to "move around" the unresolved parcel, begin construction on the next parcel, and return at such time as the necessary easement can be obtained. (Doc. 5 at ¶¶ 23-24).

20.   Temporarily stopping construction upon reaching an unresolved parcel is not a tenable option, as it would delay completion of the Project indefinitely and cause Sabal

Trail to miss the in-service date. (*Id.*). It also would result in significant financial consequences, as Sabal Trail would be liable to its contractors for delay costs resulting from work stoppage estimated to range between $20,333.00 and $123,333.00 per day. (*Id.* at ¶ 23).

21. The "move around" option would disrupt the efficient, linear workflow and delay completion of the Project for at least as long as it takes to acquire the necessary interests, thereby substantially increasing the risk of missing the in-service date. Each such "move around" is also very costly. (*Id.* at ¶ 24). Although move-around costs are subject to various factors specific to each skipped area, such as the size of the property and the nearest FERC-approved access locations for the other accessible properties, such costs will likely range between $18,000.00 to $130,000.00. (*Id.*). If all of the construction crews are required to move around a particular parcel, the cost for that single move around would be approximately $720,000.00. (*Id.*).

22. If Sabal Trail does not complete construction by the May 1, 2017 in-service date, it will be unable to timely transport price-competitive natural gas from Alabama to Florida to help meet the growing demand for natural gas by the electric generation, distribution, and end-use markets in Florida and the Southeast United States. (*Id.* at ¶ 25).

**B. Conclusions of Law**

23. It is well established that granting immediate possession of property through a preliminary injunction is appropriate where a pipeline company holds a valid FERC certificate, a court has entered an order establishing the pipeline company's right to condemn the necessary easements, and the pipeline company has satisfied the standard for

injunctive relief. *See, e.g., E. Tenn. Nat. Gas Co. v. Sage*, 361 F.3d 808, 828 (4th Cir. 2004), *cert. denied*, 543 U.S. 978 (2004); *Alliance Pipeline, LP, v. 4.360 Acres*, 746 F.3d 362, 368-69 (8th Cir. 2014), *cert. denied*, 135 S. Ct. 245 (2014); *Columbia Gas Trans., LLC, v. 101 Acres*, 768 F.3d 300, 315-16 (3d Cir. 2014), *cert. denied*, 135 S. Ct. 245 (2014).

24. In the Eleventh Circuit, as in other circuits, a party satisfies the standard for injunctive relief and is

> entitled to a preliminary injunction if it show[s]: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction is issued; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction might cause the non-moving party; and (4) if issued, the injunction would not be adverse to the public interest."

*Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 774 (11th Cir. 2015) (quoting *BellSouth Telecomms., Inc.v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 968 (11th Cir. 2005)).

25. By granting Sabal Trail's Motion for Partial Summary Judgment, this court has determined Sabal Trail has the right to condemn the subject easements. Accordingly, there is a substantial likelihood that Sabal Trail will prevail on the merits.

26. Sabal Trail will suffer irreparable injury if the requested preliminary injunction is not granted. The irreparable injury that would be suffered includes significant additional construction costs due to work suspensions, move-arounds, and/or specialty crew remobilization charges. Each disruption of the Project's orderly, linear workflow would force Sabal Trail to incur such added construction costs that could not be recouped and constitute irreparable injury. *See N. Border Pipeline Co. v. 64.111 Acres*, 125 F. Supp. 2d 299, 301 (N.D. Ill. 2000) (holding irreparable harm would result from construction

delays because increased construction costs could not be recovered from defendants); *accord Tenn. Gas Pipeline Co. v. 0.018 Acres*, No. 10-4465 (JLL), 2010 WL 3883260, at *3 (D.N.J. Sept. 28, 2010) (concluding gas company would suffer irreparable harm because "working around one small property is likely to [be] very difficult and result in large additional construction costs . . . [which] would not be able to be recovered"); *Guardian Pipeline, LLC, v. 295.49 Acres*, Nos. 08-C-0028, et al., 2008 WL 1751358, at *22 (E.D. Wis. Apr. 11, 2008) (holding pipeline company would be irreparably harmed if forced to "skip over properties scattered at various locations along the route and then come back to them at a later time" because the company would "incur hundreds of thousands of dollars of expenses to move the large amount of material, heavy equipment, and personnel from property to property as they become available [and] [n]one of these additional expenses could be recouped by [the company]").

27.  Finally, any delay in granting Sabal Trail possession of the subject easements will impede its ability to provide the needed energy delivery services already and conclusively deemed by FERC to be in the best interest of the public.

28.  The irreparable injury at stake for Sabal Trail outweighs any damage the proposed injunction may cause Defendants, whose damage is reparable. As explained in *Sage*, the damage to Defendants is simply loss of possession that "would still be disturbed, albeit at a later time, if just compensation was determined first." 361 F.3d at 829; *see also Columbia Gas Trans. Corp. v. An Easement to Construct, Operate, & Maintain a 24-inch Gas Trans. Pipeline*, No. 3:07cv00028, 2007 WL 2220530, at *4 (W.D. Va. July 31, 2007) ("[T]he only 'harm' to Defendants is that of compensation—an issue that will not change

depending on whether [the court] grant[s] or den[ies] the injunction."). The relief that Sabal Trail seeks in the form of immediate possession will not harm Defendants' right to compensation. Any damages to Defendants must and will be remedied with money. Upon the grant of injunctive relief, there will remain the proceeding to determine just compensation.

29.     Granting Sabal Trail immediate possession of the subject easements in order to construct the Project in a timely manner would advance, not undermine, the public interest. The Natural Gas Act and the FERC Certificate support this conclusion. "Congress passed the Natural Gas Act and gave gas companies condemnation power to insure that consumers would have access to an adequate supply of natural gas at reasonable prices." *Sage*, 361 F.3d at 830. Before issuing a certificate of public convenience and necessity, FERC must determine that the project at issue furthers the goals of the Act and, thus, serves the public interest. *See id.* ("FERC conducted a careful analysis of the [pipeline project] and determined that the project will promote these congressional goals and serve the public interest.").

30.     Here, FERC determined the "[P]roject's benefits to the market will outweigh any adverse effects on other pipelines and their captive customers, and on landowners and surrounding communities . . . [and] the public convenience and necessity requires approval of [the Project]." (FERC Certificate, ¶ 88, p. 28). Those findings are conclusive and binding on this Court and cannot be collaterally attacked. *See, e.g., E. Tenn. Nat. Gas*, 2006 WL 1133874, at *13 (noting the defendants could not ask the district court to "engage in an appellate review of the propriety of [the FERC-approved] project").

31. Further, supplying natural gas for the generation of electricity and other energy needs advances the public interest. *See Sage*, 361 F.3d at 830 (finding pipeline project served public interest because it would make gas available to consumers and electric power plants, as well as help local communities to attract new business); *E. Tenn. Nat. Gas*, 2006 WL 1133874, at *14 ("[T]here is a substantial public interest at stake in this case—the need to capture and supply as much natural gas to the market as soon as possible."). The Project will not only provide increased natural gas supplies to existing delivery points, but will also involve the construction of the Central Florida Hub, which will serve as a new natural gas trading point with the potential for increased market competition that will result in economic benefit to end users. (FEIS, § 1 Introduction, 1.1.1.2, pp. 1-5).

32. A delay of the Project's in-service date would cause injury to Sabal Trail's customers, particularly Florida Power & Light and Duke Energy Florida, as well as their customers—the numerous citizens and businesses that purchase electric power. Such negative impacts on a gas company's customers and the public consumers they serve may justify a preliminary injunction. *See Sage*, 361 F.3d at 829 (finding the gas company's "inability to satisfy [its] commitments would have negative impacts on its customers and the consumers they serve"). This factor counsels in favor of granting immediate possession.

33. Additionally, the Project is expected to have a positive economic impact on Florida's economy. Sabal Trail anticipates that the Project will provide approximately 4,077 temporary construction jobs, 360 permanent operational jobs, and 977 indirect

employment positions. (FEIS, § 3 Envtl. Analysis, Table 3.10-1, p. 177). Postponement of these benefits is not in the public interest. *See Sage*, 361 F.3d at 829 (noting construction delays would cause harm by hindering "economic development efforts").

34. In order to satisfy the requirement under Rule 65(c) of the Federal Rules of Civil Procedure that a movant give security upon issuance of a preliminary injunction, Sabal Trail has proposed to post a bond equal to two times the appraised value of the parcel. This Court finds such security to be sufficient. *See Sage*, 361 F.3d at 824 (observing the financial strength of the gas company and its parent corporation would enable payment if the security fell short).

35. In consideration of the foregoing factors, this Court finds that Sabal Trail's request for a preliminary injunction should be granted. The Court conditions the entry of preliminary injunction upon Sabal Trail posting a security bond in the amount of $3,600.00, which is two times the amount of Sabal Trail's most recent appraisal of the compensation owed for Parcel CL-FL-CI-080.000. That bond will "blunt" or negate any potential claim of irreparable harm to Defendants. *Sage*, 361 F.3d at 829.

Accordingly, it is hereby **ORDERED AND ADJUDGED:**

1. Plaintiff's Motion for Partial Summary Judgment (Doc. 2) is GRANTED. Sabal Trail has the right to condemn the subject easements.

2. Plaintiff's Motion for Preliminary Injunction and Immediate Possession (Doc. 3) is GRANTED.

3. Upon Sabal Trail posting a proper security bond with the Clerk of this Court in the amount of $3,600.00, the following shall occur:

      a.      Sabal Trail shall have immediate access to, and possession of, the subject easements described in the Notice of Condemnation (Doc. 1, Ex. 5) and incorporated herein; and

      b.      Sabal Trail may immediately begin pre-installation activities so that construction-related activities can commence by June 21, 2016, for the purposes of constructing the Project.

4. All pre-installation and construction-related activities shall be consistent with the FERC Certificate and all other applicable regulatory permits.

**DONE** and **ORDERED** in Tampa, Florida, this 25th day of May, 2016.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

14